IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| NBC/AUSTIN WINDRIDGE, LTD. | § | CASE NO: 06-31901 |
| and | § | |
| NBC LAS BRISAS, LTD. | § | |
|     Debtor(s) | § | |
| | § | CHAPTER 11 |

**SUPPLEMENTAL MEMORANDUM OPINION AND ORDER
LIFTING AUTOMATIC STAY**

On July 12, 2006, this Court held an evidentiary hearing on Key Real Estate Equity Capital, Inc.'s ("KREEC") motion for relief from the automatic stay. Based on the findings of fact and conclusions of law stated on the record the stay is lifted. This memorandum opinion supplements the findings and conclusions recited on the record. If this memorandum opinion is inconsistent with the findings of fact and conclusions of law stated on the record, this memorandum controls.

**Factual Background**

NBC/Austin Windridge, Ltd. ("Windridge" or "Debtor") commenced this case by filing a petition for Chapter 11 bankruptcy on May 2, 2006. CM/ECF records indicate that Windridge's petition was filed at 12:51 p.m. CDT. On May 25, 2006, Windridge's case was procedurally consolidated with NBC Las Brisas, Ltd.'s ("Las Brisas") case under the above captioned case number. This memorandum opinion, however, only relates to the debtor Windridge.

On May 14, 2002, Windridge borrowed approximately $19,120,000 from KREEC.[1] Windridge secured this loan by providing KREEC with a Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated May 14, 2002 ("Windridge Note"), encumbering

---

[1] The loan was assigned to KREEC by KeyBank National Association on May 1, 2006. This memorandum opinion will refer only to KREEC as the holder of the loan.

property in Travis County, Texas. Specifically, the encumbered property consisted of approximately 17.4 acres, owned in fee simple, with improvements including a 408 unit apartment complex ("Windridge Apartments"). The Deed of Trust also encumbered certain real property of Windridge.

The liens granted to KREEC by Windridge also served to secure payment on notes made by certain affiliates of Windridge. Las Brisas was one of these affiliates. The note made by Las Brisas in favor of KREEC, and co-secured by the Windridge Apartments, was in the amount of $3,250,000 ("Las Brisas Note"). Also on May 14, 2002, Windridge granted an additional lien on its real and personal property to KREEC in exchange for $8,000,000 in mezzanine financing ("Mezzanine Note"). The terms of all three notes (Windridge Note, Las Brisas Note, Mezzanine Note), and their supporting documents, provide, among other things, that a default of any one borrower on any one note, allows KREEC to accelerate any one or more of the notes. In sum, all three notes were cross-collateralized and contained cross-default provisions.

The Windridge Note matured on July 15, 2005, and Windridge was unable to pay the sum due upon maturity. This constituted default and on April 7, 2006, Mark Jones, at the behest of KREEC, and as Substitute Trustee, filed a Notice of Substitute Trustee's Sale with the Travis County Clerk. The notice was properly posted and provided that the sale of the Windridge Apartments would take place between 10:00 a.m. and 1:00 p.m. on May 2, 2006.

On May 2nd, Windridge and KREEC had several discussions regarding the possibility of postponing or canceling the foreclosure sale as well as the possibility of Windridge and Las Brisas filing bankruptcy. The sale was postponed numerous times, as evidenced by confirmatory emails between David Ferguson, representing KREEC, and Ken Keim, representing Windridge.

Kevin Semon, a KREEC employee and the sole contact person for KREEC with regards to the foreclosure sale of the Windridge Apartments, was copied on some of these emails.

The negotiations to prevent the foreclosure sale failed, and the sale was commenced at 12:48 p.m. KREEC submitted a credit bid of $21,150,000. There were no other bids. The sale was concluded at 12:50 p.m., with KREEC as the successful purchaser. Windridge's petition for bankruptcy was filed one minute later, at 12:51 p.m.

**Procedural Background**

On May 26, 2006, KREEC filed a motion to terminate or modify the automatic stay. The Substitute Trustee was unable to record the trustee's deed in the one minute between the conclusion of the sale and Windridge's filing of bankruptcy. KREEC's original motion seeks a lift of the stay so that the deed may be recorded. KREEC also seeks a lift of the stay so that it may foreclose on the personal property of the Debtor. KREEC argues that the personal property is of nominal value and is not necessary to an effective reorganization.

On June 14, 2006, Windridge filed a response to KREEC's motion, and also requested that the hearing set on the motion be continued. That continuance was granted, and the hearing on the lift stay motion was set for June 30, 2006. At the June 30th hearing, counsel for both sides made opening arguments based upon KREEC's original motion to lift stay. Counsel for the Debtor also argued that the foreclosure sale was ineffective under the circumstances, and thus § 544 could be used to avoid the sale. The Court, *sua sponte*, suggested to the parties that the case of *In re Hamilton*, 125 F.3d 292 (5th Cir. 1997), may be the controlling law with regards to the § 544 claim of the Debtor. Counsel was furnished with copies of *In re Hamilton* and requested a continuance to brief the application of *In re Hamilton* and marshal any additional

evidence that might be required in light of such briefing. The hearing was continued to July 12, 2006, with briefs due by July 11, 2006 at 5:00 p.m.

### Avoidance of the Transfer under § 544

Section 544(a)(3) allows the avoidance of a transfer of real property if such a transfer would be voidable by a *bona fide* purchaser as of the instant of bankruptcy. The § 544 issue in this case is thus: Would a *bona fide* purchaser have been able to obtain clear title to the Windridge Apartments as of the moment of bankruptcy?

The status of *bona fide* purchaser is defined by state law. *In re Universal Seismic Ass'n., Inc.*, 288 F.3d 205, 208 (5th Cir. 2002). In Texas, a *bona fide* purchaser is one who "acquire[s] property in good faith, for value, and without notice of any third-party claim or interest." *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001). Furthermore, Texas has adopted a race-notice recording system. *See* TEX. PROP. CODE § 13.001. This means that a hypothetical purchaser would gain good title to property sold at a valid foreclosure sale if a substitute trustee's deed had not yet been recorded and the purchaser had no notice of the foreclosure purchase. *See id.* Under § 544, the actual knowledge of the trustee (or debtor-in-possession) is not relevant. 11 U.S.C. § 544(a). "The issue is therefore whether a hypothetical purchaser would be charged with implied knowledge of the foreclosure purchase, by constructive or inquiry notice." *Realty Portfolio, Inc. v. Hamilton (In re Hamilton)*, 125 F.3d 292, 299 (5th Cir. 1997).

In Texas, constructive notice is imputed to parties upon an instrument being properly recorded; an individual's actual knowledge of the properly recorded instrument is irrelevant. *Mooney v. Harlin,* 622 S.W.2d 83, 85 (Tex. 1981); TEX. PROP. CODE § 13.002 ("An instrument that is properly recorded in the proper county is: (1) notice to all persons of the existence of the instrument;").

In this case, KREEC had properly recorded its deed of trust for the Windridge Apartments. Thus, a hypothetical purchaser of the Windridge Apartments would have had constructive knowledge of KREEC's lien and would take the property subject to the lien. *See Inwood North Homeowners' Ass'n, Inc. v. Harris,* 736 S.W.2d 632, 635 (Tex. 1987). However, the substitute trustee's deed to Windridge Apartments was not properly recorded in the one minute between closing the foreclosure sale and Windridge's bankruptcy filing. A hypothetical purchaser could not be charged with constructive knowledge of the substitute trustee's deed. Consequently, the next issue to be dealt with is "whether the deed of trust placed the hypothetical purchaser on inquiry notice. If so, the second issue is whether the hypothetical purchaser is chargeable with inquiry notice of the foreclosure purchase." *In re Hamilton*, 125 F.3d at 299.

In *In re Hamilton,* the Fifth Circuit found that "[u]nder Texas law, constructive notice of a recorded deed of trust in the chain of title puts a subsequent purchaser under a duty to make a reasonable inquiry into the status of the deed of trust." 125 F.3d at 299. Furthermore, under Texas law, inquiry notice is a type of implied knowledge and not a type of actual knowledge. *Id.* at 300. This means that inquiry notice is the type of knowledge that is relevant under § 544.

The type of inquiry that is implied to a hypothetical purchaser with constructive knowledge of a deed of trust is a "reasonably diligent inquiry." *Id.* at 300. This means that a purchaser on notice of a deed of trust "is bound to follow up this inquiry, step by step, from one discovery to another and from one instrument to another, until the whole series of title deeds is exhausted and a complete knowledge of all the matters referred to and affecting the estate is obtained." *Id.* (quoting *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 908 (Tex. 1982)). However, the step-by-step investigation described by *Westland* is still governed by reasonableness, and thus extends only to "those things which a reasonably diligent inquiry and

exercise of the means of information at hand would have discovered." *In re Hamilton*, 125 F.3d at 300 (quoting *Woodward v. Ortiz*, 237 S.W.2d 286, 289 (Tex. 1951)).

In *In re Hamilton*, the substitute trustee's deed had not been recorded two days after the foreclosure sale. *Id.* at 301. An inquiry into the record during that interim period would have shown the existence of a deed of trust, and would have provided no record that such deed had been extinguished. *Id.* Upon finding such a deed on file, the Court found that "[a] hypothetical reasonably diligent purchaser would have inquired of [the deed of trust holder] as to the status of the deed of trust." *Id.* The record in *Hamilton* did not disclose whether such inquiry would have led to discovery of the foreclosure, and the circuit court remanded for further findings. *Id.* at 302.

In this case, Kevin Semon was the sole KREEC contact with regards to the foreclosure sale of the Windridge Apartments. Mr. Semon testified at the July 12th hearing and the Court found his testimony to be wholly credible. Mr. Semon, in response to cross-examination by the Debtor, stated that he did not discover that the substitute trustee had gone forward with the foreclosure sale until he spoke to him at 12:52 or 12:53 p.m.:

Q: When did you discover that your trustee in Austin had gone forward?

A: I actually placed the call to Mr. Jones around 12:52, 12:53, and he said that he had just completed the sale…. so it was after he completed the sale.

Q: Prior to that 12:52 or 12:53 time, if someone had called you, a hypothetical someone, you would have told them the property was posted, but you wouldn't have known that you had a sale completed or not, is that correct?

A: We knew that the sale was released, we had released the trustee to hold a sale.

Q: You knew you had instructed the trustee, but you didn't know if the sale had occurred?

A: For maybe a five minute window.

Following the reasoning of *Hamilton*, and applying it to the evidence adduced at the July 12, 2006 hearing, this Court makes the preliminary finding that a hypothetical purchaser, on constructive notice of the deed of trust, had a duty to inquire of KREEC as to the deed of trust on record. Upon such inquiry, the hypothetical purchaser would not have discovered that the foreclosure sale had concluded even if the hypothetical purchaser had contacted KREEC during the one minute between the foreclosure sale and the bankruptcy.

Based on this preliminary finding, it is likely that in an adversary proceeding to decide this § 544 question, the court would find that any transfer of title may be avoided. This preliminary finding means that there does not exist good reason to lift the stay to allow KREEC to record its title.

**Lift of the Stay under § 362**

During the course of the hearing, testimony was proffered that Windridge has failed to comply with this Court's Interim Stipulated Order Authorizing Debtor to Use Rents, Profits and Income from Property Pursuant to Section 363 of the United States Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001. Such noncompliance is grounds for a lift of the automatic stay pursuant to § 362(d). However, while § 362(d) was pled as grounds to lift the stay by KREEC, it was pled on facts other than the Debtor's noncompliance with the cash collateral order. Specifically, KREEC argued that cause existed for lifting the stay because KREEC had obtained equitable title by virtue of the foreclosure sale.

Rule 15(b) of the Federal Rules of Civil Procedure provides that "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." FED. R. CIV. P. 15(b).  Thus, the issue is whether KREEC's claim that Windridge violated the cash collateral order was tried by the implied consent of the parties.  There are three factors for whether an issue has been tried by implied consent:  (1) whether the parties recognized that the issue entered the case at trial, (2) whether the evidence supporting the issue was introduced at trial without objection, and (3) whether a finding of trial by consent would prejudice the opposing party.  *Smith v. EMC Corp.*, 393 F.3d 590, 596 (5th Cir. 2004).

Whether the parties recognize that an unpleaded issue has entered the case at trial depends on whether the evidence which supports that issue is also relevant to another issue in the case.  *Triad Elec. & Controls, Inc. v. Power Sys. Eng'g, Inc.,* 117 F.3d 180, 194 (5th Cir. 1997). The introduction of evidence relevant to an issue at trial may not be used to show that the parties consented to the trial of a new issue, absent a clear indication that the party who introduced the evidence was attempting to raise a new issue. *Haught v. Maceluch*, 681 F.2d 291, 305 (5th Cir. 1982).

In *Haught*, the plaintiff brought a medical malpractice suit against her doctor, Maceluch, naming Dr. Martin as a co-defendant on the basis of his alleged partnership with Dr. Maceluch. *Id.* at 293.  Though Martin and Maceluch were not found to be legal partners, Dr. Martin was held liable under the unpleaded legal theory of partnership by estoppel.  *Id.* at 305.  Plaintiff's counsel introduced evidence under this theory by asking the plaintiff, on direct examination, whether she relied on Dr. Martin's representation that he had "brought in a partner." Plaintiff's responded that she had relied on this representation; she said she trusted Dr. Martin.  *Id.*

The court held that the partnership by estoppel theory was tried by implied consent, explaining that "[s]ince reliance is an element only of partnership by estoppel and not of legal partnership, this evidence alone should have been sufficient to notify Dr. Martin that [plaintiff] was pursuing a new issue." *Id.* at 306.  Thus, the presentation of evidence which does not serve to support any pleaded legal theory in the case is sufficient to put the parties on notice that a new issue is being introduced at trial.

In this case, it was clear to all parties that the issue of Windridge's noncompliance with the cash collateral order entered the case at trial.  Kevin Semon testified on direct examination that he was fully involved with the Windridge foreclosure sale and that he was the sole contact for KREEC regarding that sale.  KREEC's counsel then announced that he was changing the subject, stating "[I'm] gonna shift focus again and talk about some issues having to do with the lender's cash collateral."  KREEC's counsel then asked a series of questions regarding what payments KREEC had received under the cash collateral order.

Q     Since the filing of Windridge, what payments has KREEC received from the Debtor under the cash collateral order?

A     KREEC has received no payments.

Q.     Tell me a little bit about what you did to follow up or investigate with respect to the status of payments under the cash collateral order.

A.     Of course I noticed counsel that I had not received any.  I also had emails sent to the management company as I understood the checks would be issued through the management company.

Q.     And what did you learn?

A.     I was responded back that they were unaware of what amounts to make, who to send them to, and were not authorizing and were not distributing any funds.

Q.     So, as of today, KREEC has received no adequate protection payments under the cash collateral order, correct?

A.     Correct.

Mr. Semon also testified that he had not received any monthly budget reports from Windridge.  Such reports were required by the cash collateral order. In addition, David Hannah, President of Windridge, admitted that Windridge had not filed any of the required monthly operating reports and that Windridge had never provided proof of insurance to KREEC as required under the order, despite a dozen requests that it do so.

Whether or not Windridge had complied with the Court's cash collateral order is irrelevant to the issue of whether KREEC had obtained equitable title in the Windridge Apartments or whether the foreclosure sale would have been voidable by a *bona fide* purchaser pursuant § 544.  Moreover, KREEC's counsel's acknowledgement that he was "shifting focus" to issues concerning the cash collateral should have immediately put Windridge on notice that a new issue was being introduced.  KREEC's introduction, at multiple points in the hearing, of evidence which had no relevance to any of KREEC's pleaded issues put the parties and the Court on notice that a new issue was being introduced.

Windridge's counsel failed to object at any time to Mr. Semon's testimony regarding the cash collateral order, nor did counsel object to Mr. Hannah's testimony that Windridge had failed to file monthly operating reports or to provide proof of insurance.  "As a general rule, we can find implied consent when a party fails to object to evidence relating to issues that are beyond

the pleadings." *Haught* at 305 (citing 6 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL, s 1493 at 462-65.)

Finally, a finding of trial by implied consent will not prejudice Windridge. The test for prejudice is "whether [the party] had a fair opportunity to defend and whether [the party] could offer any additional evidence if the case were to be retried on a different theory." *Int'l Harvestor Credit Corp. v. East Coast Truck*, 547 F.2d 888, 890 (5th Cir. 1977). Usually a party is prejudiced by a finding of trial by implied consent if defense against the new issue would require the party to conduct additional discovery. *See US v. Shanbaum,* 10 F.3d 305, 313 (5th Cir. 1994). In this case, Windridge would not need to reopen discovery for the purpose of defending against the issue of its violation of the cash collateral order because all relevant evidence of whether it had made the required payments would be in Windridge's own records. Additionally, the president of Windridge was present and able to take the stand, so there can be no question that Windridge had a fair opportunity to defend against this theory and was able to offer additional evidence if it had chosen to do so.

In sum, KREEC introduced evidence at the July 12th hearing that Windridge has failed to meet the requirements of this Court's interim cash collateral order. This failure was not explicitly pleaded as grounds for lifting the automatic stay, and is not relevant to the grounds that were pled. The introduction of this evidence was obvious and uncontested, and Windridge had full opportunity to defend against the allegations. Windridge did not mount a defense. Consequently, the Court finds that the issue of lifting the stay pursuant § 362(d) for failure to abide by an interim cash collateral order was tried by implicit consent. Based on the testimony adduced at trial, the Court finds that the cash collateral order was blatantly violated, and this is sufficient cause to lift the automatic stay with regards to the Windridge Apartments.

Signed at Houston, Texas, on July 18, 2006.

_____
MARVIN ISGUR
United States Bankruptcy Judge